UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>        v.<br><br>HITACHI, LTD.,<br><br>    Defendant. | Civil Action No. 1:15-cv-01573 (CKK) |

MEMORANDUM OPINION
(November 24, 2015)

Plaintiff Securities and Exchange Commission (the "SEC") filed the Complaint in the above-captioned action on September 28, 2015, alleging that Defendant Hitachi, Ltd. ("Hitachi") violated certain accounting control provisions of the Foreign Corrupt Practices Act ("FCPA") [15 U.S.C. § 78m(b)(2)(A)-(B)].  Presently before the Court is the parties' Joint Motion for Approval and Entry of Proposed Consent Judgment.  *See* ECF No. [5].  For the reasons stated below, the Court GRANTS the parties' Joint Motion for Approval and Entry of Proposed Consent Judgment.

## I. BACKGROUND

### A. The SEC's Complaint

As alleged in the Complaint, in 2005, Hitachi created a subsidiary in South Africa for the purpose of establishing a local presence in that country to pursue lucrative public and private contracts, including government contracts to build two new major power stations.  Complaint ¶ 2. To obtain preferential bidding status in accordance with post-Apartheid empowerment legislation, Hitachi sold 25% of the stock in its newly-created subsidiary to a local investment firm, Chancellor House Holdings (Pty) Ltd. ("Chancellor"), which was a front for the African National Congress

("ANC"), South Africa's ruling political party. *See id.* ¶ 3, 21, 28. Hitachi's arrangement gave Chancellor—and by proxy the ANC—the ability to share in the profits from any power station contracts secured by Hitachi. *Id.* ¶ 3. Hitachi also entered into a separate "success fee" arrangement with Chancellor, wherein Chancellor would be entitled to "success fees" in the event Hitachi secured contracts "substantially as a result" of its efforts. *See id.* ¶¶ 3, 32-35.

During the course of bidding on the power station contracts, a series of news articles in the South African press reported that Chancellor was a funding vehicle for the ANC—a fact that the ANC's Secretary General publicly acknowledged and that Chancellor's chairman admitted. *See id.* ¶¶ 22-26, 40-45, 55. Hitachi, nevertheless, maintained its relationship with Chancellor through its subsidiaries and encouraged Chancellor to use its political influence to help Hitachi obtain the government contracts. *See id.* ¶¶ 4, 46-51.

Ultimately, in 2007, Hitachi was awarded the power station contracts, which were worth approximately $5.6 billion. *See id.* ¶¶ 5, 54, 56. In 2008, Hitachi's subsidiary paid Chancellor "success fees" totaling approximately $1.1 million. *See id.* ¶¶ 5, 59. In 2010, Hitachi's subsidiary recorded a dividend worth over $1.7 million dollars to be paid to Chancellor. *See id.* ¶¶ 7, 63-65. Hitachi's subsidiary inaccurately recorded both payments in their accounting books, describing the payments as "consulting fees" and "dividends declared," without any reference to the fact that the payments to Chancellor were in exchange for its political influence in assisting Hitachi obtain two government contracts. *See id.* ¶¶ 6-7, 60-61, 63. The subsidiary's inaccurate books and records were consolidated into Hitachi's financial statements for the fiscal years ended in 2009 and 2011, and filed with the SEC. *See id.* ¶¶ 6-7, 60, 65.

In 2011, Hitachi's subsidiary declared and recorded a second dividend worth approximately $3.2 million due to Chancellor. *See id.* ¶ 66. This dividend declaration reflected on

the subsidiary's books and records was consolidated into Hitachi's financial statements for the year ended March 31, 2012, but those statements were not filed with the SEC because Hitachi voluntarily terminated its registration and duty to file reports with the SEC. *See id.* ¶¶ 12, 66.

In February 2014, Hitachi repurchased Chancellor's shares in Hitachi's subsidiary for approximately $4.4 million. *Id.* ¶ 68. In total, Chancellor received approximately $10.5 million from Hitachi, a return of over 5,000% on its investment in Hitachi's subsidiary. *Id.* ¶ 69.

The SEC alleges that Hitachi has violated Sections 13(b)(2)(A) and (b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78m(b)(2)(A), (B)]. *See id.* ¶¶ 77-80.

### B. The Proposed Settlement

Hitachi has agreed to settle the SEC's charges and consented to the entry of a proposed consent judgment. *See* Consent of Hitachi, ECF No. [1-2]; Proposed Consent Judgment, ECF No. [1-3]. The terms of the settlement were negotiated by Hitachi's counsel and were considered and approved by the SEC. Joint Mot. at 3. The proposed consent judgment permanently enjoins Hitachi from violating the Exchange Act's books and records and internal accounting controls provisions—which are the provisions that the SEC's complaint alleges that Hitachi violated. *See* Proposed Consent Judgment, ECF No. [1-3], at 1. The proposed consent judgment also orders Hitachi to pay a civil penalty in the amount of $19,000,000 under Section 21(d)(3) of the Exchange Act. *See* Consent of Hitachi, ECF No. [1-2], at 1; Proposed Consent Judgment, ECF No. [1-3], at 1-2. Under the proposed consent judgment, Hitachi would make this payment within 30 days after entry of a final judgment. Proposed Consent Judgment, ECF No. [1-3], at 2.

## II. LEGAL STANDARD

Prior to approving a proposed consent decree, or consent judgment, "a court must satisfy

itself of the settlement's overall fairness to beneficiaries and consistency with the public interest." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (internal quotation marks omitted). Specifically, the Court must "determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties." *Id.* (citation omitted); *see also Massachusetts v. Microsoft,* 373 F.3d 1199, 1206 n.1 (D.C. Cir. 2004) (noting that any consent decree must "fairly and reasonably resolve the controversy in a manner consistent with the public interest") (internal quotations and citation omitted). Approving a consent decree "is a judicial act" that the Court undertakes with care. *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1462 (D.C. Cir. 1995). However, short of a decree that "make[s] a mockery of judicial power," the Court should accept an agreement between the parties. *Id.* As this circuit has recognized, "voluntary settlement of civil controversies is in high judicial favor," as "[n]ot only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation." *Citizens for a Better Env't,* 718 F.2d at 1126.

### III.  DISCUSSION

The parties jointly request that the Court approve and enter the proposed consent judgment filed by the parties. *See* Joint Mot. at 1. In reviewing the proposed consent judgment for approval and entry, the Court considers (1) whether there was valid consent by the parties to the proposed consent judgment; (2) whether the proposed consent judgment is fair, reasonable, and adequate; and (3) whether the proposed consent judgment is consistent with the public interest. *See Citizens for a Better Env't,* 718 F.2d at 1126.

**A.  There was valid consent by the parties to the proposed consent judgment.**

The Court must first determine whether there was valid consent by the parties to the

proposed consent judgment. *See Citizens for a Better Env't,* 718 F.2d at 1126.

Here, both parties represent that the settlement is a product of good-faith, arms-length negotiation. Joint Mot. at 1. The parties further represent that they have each taken into account the "litigation risks, the benefits to both parties of avoiding those risks and of avoiding protracted litigation, and the public interest, including that the public settlement sends a message of deterrence to other publicly-traded companies with international operations." *Id.* The content of the proposed consent judgment also supports a finding of valid consent. The proposed consent judgment carefully delineates the scope of the injunctive relief, the civil penalty, the timing and manner of its payment, and other terms to which Hitachi and the SEC have agreed. *See* ECF No. [1-3]. The Consent of Hitachi signed by Hitachi's Vice President and Executive Officer—the agent authorized to sign on behalf of Hitachi—also indicates that Hitachi entered into the agreement voluntarily, and that Hitachi understands and agrees to the terms of the proposed consent judgment. *See* Consent of Hitachi, ECF No. [1-2]. Finally, the parties' status—Hitachi is a private, sophisticated, counseled litigant, and the plaintiff is the United States government itself—strongly supports a finding of valid consent. *See United States v. Wells Fargo Bank*, NA, 891 F. Supp. 2d 143, 145 (D.D.C. 2012)

### B. The proposed consent judgment is fair, adequate, reasonable, and appropriate under the particular facts.

Second, the Court must determine whether the proposed consent judgment is "fair, adequate, reasonable, and appropriate under the particular facts." *Citizens for a Better Env't,* 718 F.2d at 1126 (citation omitted).

As a preliminary matter, the Court observes that the Second Circuit recently held that a district court should not consider the "adequacy" of a proposed consent judgment involving an

enforcement agency. *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014). In *Citigroup*, the Second Circuit held that consideration of "adequacy" is unnecessary in cases involving an enforcement agency—particularly when that agency is the SEC—because such consent decrees do not preclude future claims by potential plaintiffs with private rights of actions, if such persons exist. *See id.* The Second Circuit reasoned that the consideration of "adequacy" by a Court reviewing a consent decree "appears borrowed from the review applied to class action settlements, and [is] particularly inapt in the context of a proposed S.E.C. consent decree." *Id.* Since *Citigroup*, the D.C. Circuit has not ruled on whether a district court should consider the "adequacy" of a proposed consent judgment between the SEC and a private litigant. The Court therefore shall review the proposed consent judgment in this case in accordance with the D.C. Circuit's decision in *Citizens for a Better Environment*, that is, whether the proposed consent judgment is "fair, *adequate*, reasonable, and appropriate under the particular facts." 718 F.2d at 1126 (emphasis added).[1]

Here, Hitachi has consented to the entry of a judgment that permanently enjoins it from violating Sections 13(b)(2)(A) and (b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)]. *See* Proposed Consent Judgment, ECF No. [1-3], at 1. This injunction is designed to prevent future violations by Hitachi of the books and records and internal accounting controls provisions that are alleged in the complaint. Joint Mot. at 6. Hitachi also has agreed to pay, within 30 days after entry of the final judgment, a civil penalty in the amount of $19,000,000, pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. *See* Proposed Consent Judgment,

---

[1] The Court notes that distinction is of no consequence in this case, because the Court finds that the proposed consent judgment is fair, reasonable, appropriate under the particular facts, *and* adequate.

ECF No. [1-3], at 2.  The $19,000,000 figure represents a compromise figure that the parties arrived at following lengthy negotiations regarding the extent of potential monetary liability for the violations alleged in the complaint and what would be an acceptable penalty in connection with settlement of the charges.  Joint Mot. at 6.  The parties indicate that the terms take into account careful assessment by both parties of the risks likely to be presented in litigation of this matter, the benefits of avoiding those risks, and other considerations.  *Id.*

The Court finds that the terms set forth in the proposed consent judgment constitute a "balance of advantages and disadvantages" for each of the respective parties.  *SEC v. Clifton*, 700 F.2d 744, 748 (D.C. Cir. 1983).  Accordingly, the Court concludes that the proposed consent judgment reflects a resolution that is "fair, adequate, reasonable, and appropriate under the particular facts" of this case.  *See Citizens for a Better Env't,* 718 F.2d at 1126.

### C.  The proposed consent judgment is consistent with the public interest.

Finally, the Court must ensure that the consent decree is "consisten[t] with the public interest," *Citizens for a Better Env't*, 718 F.2d at 1126; in other words, "that the agreement is not unlawful, unreasonable, or against public policy," *United States v. Wells Fargo Bank, NA*, 891 F. Supp. 2d 143, 146 (D.D.C. 2012) (internal quotation marks omitted).

Here, no third parties will be injured by the proposed settlement, and no third party has objected to it.  *See* Joint Mot. at 7-8.  Furthermore, the proposed consent judgment would permanently enjoin Hitachi from violating the Exchange Act's books and records and internal accounting controls provisions—the very provisions that the SEC's complaint alleges that Hitachi violated.  *See* Proposed Consent Judgment, ECF No. [1-3], at 1.  Such an injunction protects the public by warning the public of potential violations and serves as a reminder to other international companies the importance of careful due diligence and other controls to ensure compliance with

U.S. anti-corruption laws, including the FCPA.  *See Clifton*, 700 F.2d at 748.

## IV.  CONCLUSION

For the reasons stated above, the Court GRANTS the parties' Joint Motion for Approval and Entry of Proposed Consent Judgment.

An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE
